SO ORDERED.

SIGNED this 4th day of December, 2012.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

---

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

**DICKINSON THEATRES, INC.,**
**a Kansas corporation,**

          **DEBTOR.**

**CASE NO. 12-22602**
**CHAPTER 11**

## MEMORANDUM OPINION AND ORDER
## DENYING CONFIRMATION OF DEBTOR'S FIRST AMENDED AND RESTATED
## PLAN OF REORGANIZATION AS MODIFIED

On November 28, 2012, the Court held an evidentiary hearing on confirmation of

Debtor's First Amended and Restated Plan of Reorganization Dated November 5, 2012,[1] as

modified during the confirmation hearing (the Plan).[2]  Two objections to confirmation were

filed, one by the Treasurer of Maricopa County, Arizona, which the Debtor will resolve by

agreement, and one by Creditors Spirit Master Funding, LLC and Spirit Master Funding IV,

---

[1] Dkt. 194.

[2] The modifications are set forth in Exhibit A to the Declaration of Ronald J. Horton in Support of
Confirmation of the Debtor's First Amended and Restated Plan of Reorganization, as modified, Dkt. 255.

LLC (collectively Spirit), which was the subject of the hearing.[3] This memorandum will address only those portions of the Plan relevant to Spirit's primary objection - that the Plan cannot be confirmed because it violates § 365(d)(4), defining the time limits for assuming or rejecting an unexpired lease of nonresidential real property. The Court also addresses feasibility.

Debtor, Dickinson Theatres, Inc., is engaged in the movie theater business in multiple locations. Spirit and Debtor are parties to an Amended and Restated Master Lease Agreement dated August 1, 2009 (the Master Lease). Through the Master Lease, Debtor leases from Spirit four properties on which it operates some of its movie theaters; three of those locations are highly profitable, but the fourth, Palm Valley, is not. On September 21, 2012, Debtor filed a motion to reject, in part, the Master Lease, by which it sought to reject only the portion of the Master Lease concerning Palm Valley (Partial Rejection Motion).[4] Spirit objected, and an evidentiary hearing was held on October 4, 2012. On October 12, 2012, this Court issued its opinion and judgment denying Debtor's Partial Rejection Motion.[5] On October 26, 2012, Debtor filed a notice of appeal from that order to the Bankruptcy Appellate Panel of the Tenth Circuit (BAP). The appeal is pending.

The Plan attempts to preserve the Debtor's appeal. It includes the denial of the Partial Objection Motion within the schedule of those actions to be retained after confirmation.[6]

---

[3] Dkt. 243.

[4] Dkt. 15.

[5] Dkt. 129.

[6] Dkt. 254, Plan Exhibit B.

2

Although the Plan provides for assumption of the Master Lease,[7] it also includes in the Schedule of Rejected Leases and Executory Contracts the "Palm Valley portion" of the Master Lease, noting it was the subject of the Partial Rejection Motion, which was denied and is the subject of the appeal.[8]  The Plan creates a Spirit Contingent Unsecured Claim, defined as any allowed claim "arising from any court ultimately granting the relief requested"[9] in the Partial Rejection Motion. At the evidentiary hearing, Debtor's counsel clarified that the Spirit Contingent Unsecured Claim is intended to be Spirit's rejection damages in the event the Master Lease is rejected in part.

The Court construes the Plan as providing for conditional assumption of the Master Lease, or at least of the Palm Valley portion of the Master Lease.  The Plan clearly defers the final decision to assume the lease in full until after the appeal is finally determined.  This understanding is supported by the testimony of Robert J. Horton, the Chief Executive Officer of Debtor, who testified as to the feasibility of making lease rejection payments to Spirit under the assumption that partial rejection would be allowed by an appellate order entered in June of 2013. He testified that the Debtor is projected to have sufficient funds to pay rejection damages over time, if the damages would be a general unsecured claim.  However, Mr. Horton also testified, that if, as contended by Spirit, the rejection claim would be entitled to administrative expense

---

[7] The Master Lease is not included in Plan Exhibit A, Schedule of Rejected Leases and Executory Contracts.  Dkt. 254, Plan Exhibit A.

[8] Dkt. 254, Plan Exhibit A.

[9] Dkt. 254 at 24.

3

priority and therefore had to be paid in a lump sum,[10] it would be tough to make payment and "it would make more sense just to assume [the lease] and not have to pay the full amount."[11]

Under § 1129(a)(1) the court shall confirm a plan only if the "plan complies with the applicable provisions of this title." Spirit's objection to confirmation is based in part[12] on the contention that the Plan violates § 365 in three respects: it seeks to delay the decision to assume or reject the Palm Valley portion of the Master Lease in violation of the time limits of § 365(d)(4); it improperly classifies the Spirit Contingent Unsecured Claim as a subclass of an unrelated unsecured claim of Spirit; and it miscalculates the amount of rejection damages, which should under § 365(d)(4) be in the amount of $934,585.51. Since the Court finds the first objection meritorious, it does not address the second and third objections, which, if they were the only obstacles to confirmation, would undoubtedly be resolved by agreement of Spirit and the Debtor. For purposes of the confirmation hearing, the parties agreed that the rejection damage amount would be $934,585.51, the amount claimed by Spirit, rather than $736,998.72, the amount Debtor included in the proposed Plan.

The Court agrees with Spirit that the Plan violates the time limits of § 365(d)(4), which provides:

> (4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the

---

[10] See 11 U.S.C. § 503(b)(7).

[11] Partial Transcript, at 46.

[12] Spirit also contends that Debtor has failed to cure all defaults under the Master Lease as required for assumption and under a promissory note held by Spirit as required before reinstatement. These contentions are not addressed by this memorandum. Dkt. 243.

4

trustee does not assume or reject the unexpired lease by the earlier of--
(I) the date that is 120 days after the date of the order for relief; or
(ii) the date of the entry of an order confirming a plan.

(B)(I) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
(ii) If the court grants an extension under clause (I), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

Under the foregoing, the Master Lease is assumed to be rejected if it is not assumed by the earlier of the date the order confirming the plan is entered or, unless Spirit consents to an extension, the 120 day limit, which in this case is April 22, 2013.[13]

The Court finds the Plan, by providing for conditional assumption of the Master Lease, violates the requirement of § 365(d)(4) that a lease be definitively assumed or rejected by a specific date. The subsection unambiguously states that a lease of nonresidential real property will be deemed rejected unless assumed by the earlier of two dates, one of which is the date of an order of confirmation. There is no provision in § 365(d)(4) allowing for a conditional assumption - an assumption subject to a later option to reject. Rather, the purpose of § 365(d)(4), which became effective in 2005 under BAPCPA, is "to establish a firm, bright line deadline by which an unexpired lease of nonresidential real property must be assumed or rejected."[14] The Court therefore concludes that the Plan violates § 365(d)(4) by attempting to

---

[13] For purposes of this opinion only, the court adopts the date as calculated by Spirit. *See* Dkt. 243.

[14] H.R. Rep. No. 109-31, Pt.1, p. 86 109th Cong. 1st Sess (2005), reprinted in E-2 *Colliers on Bankruptcy*, App. Pt. 10(b) at 10-354 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2012).

5

extend the time for Debtor to decide whether to assume or reject the Palm Valley portion of the Master Lease beyond the date of entry of an order of confirmation.

Further, even assuming that a conditional assumption of the Palm Valley portion of the Master Lease were permissible, the Plan would also violate the strict time limits of § 365(d)(4). The Plan places no time limit of Debtor's election to reject the Palm Valley portion of the Master Lease. Assuming a final appellate decision reversing this Court and allowing such partial rejection, there is no guarantee that such order would be effective prior to April 22, 2013, the last day available to the Debtor for making the decision to assume or reject. Absent consent of Spirit, the Court has no discretion to extend the deadline past the April 2013 date. The legislative history of § 365(d)(4) indicates that the provision requiring lessor consent for extensions of time in excess of 90 days, was "designed to remove the bankruptcy judge's discretion;" a judge has "no authority to grant further time unless the lessor has agreed in writing to the extension."[15]

For the foregoing reasons, the Court concludes that the Plan can not be confirmed because it violates § 365(d)(4).

The Court also holds that Debtor has failed to prove the Plan is feasible. At the hearing, Debtor produced evidence as to feasibility of the Plan. As stated on the record, the Court finds the Plan would be feasible if it provided for assumption of the Master Lease without reserving the conditional rejection of the Palm Valley portion. However, the Court finds that the Debtor has not sustained its burden of proof as to feasibility of the Plan as presented. At the hearing, the question arose whether, if this Court's ruling denying the rejection of the Palm Valley portion of the Master Lease were reversed and Debtor thereafter elected to reject, the rejection damages

---

[15] *Id*. at p. 87.

which would be owed to Spirit would be an administrative expense. Thus feasibility requires either a finding that: (1) as a matter of law the rejection claim would not be an administrative claim; or (2) Debtor's projections show reasonable ability to pay rejection damages in a lump sum at a future unknown time. Debtor has not attempted at this time to satisfy condition one,[16] and the Court makes no ruling on the legal issue. Debtor also has not satisfied condition two. Debtor's financial projections do not include such a lump sum payment. Mr. Horton's testimony does not convince the Court that such a payment could be made. He testified that if the rejection occurred prior to 2017, in order to make payment, Debtor would have to resort to a line of credit, the availability of which was uncertain. He further testified that although the projections estimate that Debtor would have sufficient cash to write a check for $934,000 in 2017, at that time it would make more sense just to assume the lease rather than have to pay the full amount in a lump sum.

The Court recognizes that the Court's rulings may in effect preclude an appeal of the denial of the Partial Rejection Motion. But this is not a reason to confirm a plan which does not conform to the requirements of § 1129. In bankruptcy practice, there are some adverse rulings from which an effective appeal is not available.[17] In accord with the denial of the Partial

---

[16] The Plan assumes the rejection damages would be a general unsecured claim. Neither Debtor nor Spirit in their pleadings addressed the legal question of whether this classification would be correct or whether the claim would have administrative priority.

[17] Debtor could have waited until closer to the April deadline for assumption or rejection to seek confirmation, by which date the BAP may have ruled. However, this would not solve the dilemma, since Spirit has made clear that it would appeal any adverse ruling by the BAP.

Rejection Motion and the applicable sections of the Bankruptcy Code, Spirit is entitled to have the Master Lease either assumed in full or rejected in full.[18]

For the foregoing reasons, the Court sustains Spirit's objection to confirmation and finds Debtor has not proven the Plan to be feasible.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. The judgment based on this ruling stated above will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

**###**

---

[18] Spirit has not obstructed Debtor's reorganization. Spirit proffered that, prior to filing of the Chapter 11 petition, it made substantial concessions to the Debtor.